UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| US UNCUT LLC,<br><br>    Plaintiff,<br><br> v.<br><br>RYAN CLAYTON,<br>   and<br>JOHN DOES Nos. 1 through 10.<br><br>    Defendants. | Civil Action No. 1:16-cv-368<br>JURY TRIAL DEMANDED |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

The Plaintiff, US Uncut LLC ("US Uncut"), by its attorneys, Devine, Millimet & Branch, Professional Association, complains against defendant Ryan Clayton and John Does Nos. 1 through 10 doing business as "US UNCUT" and "usuncut.news" for trademark infringement and dilution, cyberpiracy, unfair competition, unfair and deceptive trade practices, and common law conversion and trespass to chattels.  US Uncut seeks preliminary and permanent injunctive relief, an accounting, actual damages in an amount to be proven at trial, statutory enhanced damages, and attorneys' fees, and in support of such relief alleges as follows:

## INTRODUCTION

US Uncut has filed this action because defendants Ryan Clayton ("Clayton") and John Does Nos. 1 through 10 created and continue to maintain a web page on the Internet using the domain name "usuncut.news," which is virtually identical to the US UNCUT common law service mark owned by plaintiff and the web page plaintiff has maintained on the Internet since 2014 using the domain name "usuncut.com." Defendants Clayton and John Does Nos. 1 through 10 are using the web page to generate revenue from advertisers by posting articles on topics of interest to an audience that follows current events relating to politics, the economy, and human rights, which is the same business in which US Uncut is engaged and for which its brand is famous. Making matters worse, US Uncut believes Defendants Clayton and John Does Nos. 1 through 10 are the people who recently took control of US Uncut's popular Facebook page, which has more than 1.5 million followers, and are posting links on the page that are directing US Uncut's Facebook followers to visit a competitor's confusingly similar web page, "usuncut.news." Clayton has also filed an application before the United States Patent and Trademark Office to register "US UNCUT" as a service mark for a news reporting service despite the fact that US UNCUT is a service mark that belongs to US Uncut.

The conduct of defendants Clayton and John Does Nos. 1 through 10 constitutes willful infringement of US Uncut's rights in its protected common law service mark US UNCUT, conversion of US Uncut's property interest in its Facebook page, all of which has caused substantial and continuing harm to US Uncut. And while US Uncut has identified Clayton as a named defendant in this action, it believes Clayton has been aided by one or more persons who have an interest in causing harm to US Uncut and its owners. US Uncut anticipates it will learn

through discovery the identities of those persons and that it will need to amend its Complaint to add those persons as defendants.

## PARTIES

1.  Plaintiff US Uncut is a New Hampshire Limited Liability Company which provides online media services. US Uncut's principal office address is 217 Cameron Street, Manchester, New Hampshire 03103.

2.  Defendant Ryan Clayton ("Clayton") is an individual who lives at 200 Bodwell Road, Manchester, New Hampshire 03109.

3.  Defendants John Does Nos. 1 through 10 are persons whose identities are presently unknown, but who are believed to have directly participated in the wrongful conduct alleged herein or conspired with the named defendant to harm US Uncut. Once the identities of these persons are discovered, the Plaintiff will seek to amend it Complaint to identify such persons as named defendants.

## JURISDICTION AND VENUE

4.  This Court possesses subject matter jurisdiction under 28 U.S.C. § 1338 because this action arises under federal trademark law, 15 U.S.C. § 1051 *et. seq.* This Court may also exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

5.  Venue is proper in this District under 28 U.S.C. § 1391 because the defendant resides in New Hampshire and because a substantial part of the events giving rise to the claims at issue occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

<u>The Rise of the US Uncut Movement</u>

6. In February 2011, a decentralized direct action group formed in the United States to combat corporate tax avoidance and highlight cuts to social spending and public sector jobs. Two early members of the group, Carl Gibson and Ryan Clayton, each created Facebook pages within days of each other named "US UNCUT." The purpose of the Facebook pages was to help distribute information about the group's actions, which were taking place on a national scale. Indeed, the group's first direct action – a protest against a large financial institution – occurred simultaneously in 50 cities across the United States. In and around this same time, Gibson also secured the Internet domain "usuncut.org," and used it to host a web page to distribute information about the group's actions.

7. Soon after establishing their respective Facebook pages, Gibson and Clayton agreed to combine their information distribution efforts on Facebook into a single page, the name of which remained "US Uncut."

8. Both Gibson and Ryan maintained administrator rights for the Facebook page, meaning they each could add or remove content to the page. Another member of the group was also given administrator rights to help manage the content of the Facebook page.

9. By the fall of 2011, Gibson was handling the majority of the work for posting content to the US Uncut Facebook page. Clayton continued to assist with postings to the Facebook page, but on or about August 4, 2013 Clayton became the Executive Director for a political action committee called "Wolf PAC," and significantly reduced the level of his participation in managing the page as compared to the early days of 2011.

10. In 2012, Mark Provost joined the operation of the US Uncut Facebook page.

11. By the end of 2012, the administrators of the US Uncut Facebook page, which by that time included Gibson, Provost, Clayton and a fourth individual, had settled into a practice whereby content for the page was decided by roundtable discussion among the administrators and decisions as to what would and would not appear on the page were decided by majority vote.

12. In June 2014, Clayton was removed as an administrator of the US Uncut Facebook page because he posted content on the page that the other administrators viewed as contrary to the group's guiding principles. Worse still, Clayton posted the content despite a majority vote of the administrators that the content not be posted to the Facebook page. Clayton's removal as administrator meant that he could no longer post content to the Facebook page.

The US Uncut Service Mark

13. Following Clayton's departure, Gibson and Provost undertook a deliberate and sustained effort to build a "US Uncut" brand that would serve as a leading publisher for well-written, quality stories about topics of interest to people interested in the goals of the US Uncut movement. To this end, Gibson and Provost formed US Uncut LLC and launched a new website, www.usuncut.com. The articles US Uncut LLC produced were published on usuncut.com and linked to the US Uncut Facebook page.

14. By 2015, US Uncut had established itself as a preeminent, non-mainstream online news source, with content outlets that included usuncut.com and the US Uncut Facebook page. As of August 1, 2016, the US Uncut Facebook page had over 1.5 million followers, and was ranked as a Top 25 Facebook Publisher worldwide. Its web site, usuncut.com, generated 10 to 32 million monthly page views.

15. In order to support itself and continue creating content, US Uncut began selling advertising on its usuncut.com website in August 2015. This was the first commercial activity of US Uncut LLC and the first definitive use of the US UNCUT service mark in commerce. The US Uncut Facebook page became an important component in the ability of US Uncut to sustain its operations because viewers of the Facebook page would also often become viewers of US Uncut's web site, usuncut.com. In other words, the Facebook page was a primary conduit for viewers (and revenue) for US Uncut's website.

The Hijacking of US Uncut's Facebook Page

16. Until a few days ago, US Uncut was the sole administrator of the US Uncut Facebook page. And, as noted already, the Facebook page was an important component of the operations for US Uncut's news reporting service because the page serves 1.5 million Facebook followers.

17. At 4:03 PM on August 3, 2016, US Uncut learned that it was locked out of its Facebook page and that the administrator rights had somehow been changed without any warning to US Uncut. Since then, the US Uncut Facebook page has been operated by one or more persons who are posting stories that link to a new web site that was designed to look like US Uncut's web site and given the confusingly similar name of "usuncut.news." The website "usuncut.news" will be referred to hereinafter as the "Competitor Web Site."

18. To date, despite the fact that the members of US Uncut have had exclusive use, control, and responsibility for the US Uncut Facebook page since June 2014, Facebook representatives have refused to reveal: (a) why US Uncut's members were removed as administrator's for the US Uncut Facebook page; (b) the identity of the person (or persons) who

now control the US Uncut Facebook page; and, (c) why the Facebook page is being used to promote the Competitor's Web Site.

19. US Uncut believes Clayton is behind the launch of the Competitor Web Site and the hijacking of US Uncut's Facebook page because on July 11, 2016, only days before "usuncut.news" was launched, Clayton filed an application before the United States Patent and Trademark office to register US UNCUT as a service mark for "[n]ews reporting services, namely, providing news in the nature of current event reporting; providing news, information and commentary through a website, electronic newsletter, and social media in the nature of current events relating to politics, the economy, and human rights." Of course, the US Uncut mark is actually owned by US Uncut because it has used US UNCUT continuously since its inception as a media company and its predecessors-in-interest, Messrs. Gibson and Provost, used it continuously as a mark before then.

20. In any event, US Uncut is unable to confirm its belief about the ownership of the Competitor's Web Site because (a) the Competitor's Website does not have any information about who owns it, and (b) when registering its URL, the owner of the Competitor Web Site paid for a service to block the owner's identity from public disclosure.

21. US Uncut also believes Clayton is behind the hijacking of its Facebook page because of Clayton's recent association with members of a US Uncut competitor, Addicting Info Enterprises, LLC, as well as with an individual named Aaron Minter. The members of Addicting Info Enterprises, LLC are Matthew Hanson and Daniel Gouldman. Matthew Hanson sometimes uses the alias "Matthew Desmond" when posting on the Internet. Daniel Gouldman sometimes uses the alias "Icarus Deum Verum" when posting on the Internet. Aaron Minter, who also uses

the name Aaron Black, is an associate with a Washington, DC based consulting firm, and has experience with online media issues.

22. Upon information and belief, Clayton met with Matthew Hanson and/or Aaron Minter on one or more occasions at the Democratic National Convention in Philadelphia, PA during the week of July 25, 2016, just a few days before US Uncut lost control of its Facebook page. US Uncut also believes that at least two writers who regularly write articles for web sites operated by Addicting Info Enterprises, LLC, are also writing articles for the Competitor's Web Site, but using assumed names.

23. What is more, Mark Provost, a member of US Uncut, was told on August 4, 2016, by Eric Barbera, a Facebook employee, that Barbera had heard that someone at the Democratic National Convention in July 2016 was disputing US Uncut's right to use the US Uncut Facebook page.

24. Finally, US Uncut believes Clayton is behind the hijacking of its Facebook page because Clayton recently facilitated the republishing of a conversation on the US Uncut Facebook page. This activity occurred as recently as August 12, 2016.

25. Since the evening of August 3, 2016 (when US Uncut lost control of the US Uncut Facebook page), at least thirty-five (35) stories have been posted on the Competitor Web Site and then linked to US Uncut's Facebook page.

## CAUSES OF ACTION

### COUNT I
### (Trademark Infringement 15 U.S.C. § 1125(a))

26. US Uncut LLC realleges and incorporates herein by reference all of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

27. Defendants' intentional and unauthorized use of US UNCUT and any domain name which is confusingly similar to US Uncut's trademarks, including but not limited to the use of "usuncut.news" as a domain name and use of US Uncut LLC's Facebook page, constitutes trademark infringement in violation of the Lanham Act.

28. Without injunctive relief, US Uncut LLC has no means by which to prevent Defendants' infringing conduct, and US Uncut will continue to be harmed irreparably by the confusion and deception to the public. No amount of money damages can adequately compensate US Uncut if it loses the ability to control the use of its trademarks, reputation and good will. US Uncut thus is entitled to injunctive relief prohibiting Defendants from using US Uncut's name or marks, or any other confusingly similar names or marks in any way in connection with the publication of news and articles on the Internet or through social media.

29. US Uncut is also entitled to recover its damages as well as any profits realized by Defendants through their misconduct, together with the costs and attorneys' fees relating to this action, pursuant to 15 U.S.C. § 1117(a).

### COUNT II
### (Famous Trademark Dilution 15 U.S.C. § 1125(c))

30. US Uncut LLC realleges and incorporates herein by reference all of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

9

31. Through years of use, promotion and publicity, the US UNCUT service mark has become famous throughout the United States, representing a high-quality source of news and articles for audiences on social media and the Internet.

32. Defendants' use of US Uncut LLC's Facebook page and "usuncut.news" has and will continue to cause dilution of the distinctive quality of US Uncut LLC's famous mark. Accordingly, US Uncut LLC is entitled to injunctive relief pursuant to 15 U.S.C. § 1125(c).

33. Because Defendants knowingly, willfully and intentionally traded on US Uncut LLC's reputation and diluted US Uncut LLC's famous mark, US Uncut LLC is also entitled to the relief provided for under 15 U.S.C. § 1117(a), including an award of damages up to three times actual damages and an award of costs and attorneys' fees.

## COUNT III
### (Cyberpiracy 15 U.S.C. § 1125(d))

34. US Uncut LLC realleges and incorporates herein by reference all of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

35. Defendants have registered, trafficked in and used a domain name that is confusingly similar to and dilutive of US Uncut LLC's protected service mark with a bad faith intent to profit from the fame and good will of US Uncut LLC's name and service mark in violation of the Anticybersquatting Consumer Protection Act. 15 U.S.C. § 1125(d).

36. Defendants' conduct as described herein, and especially the continued ownership, maintenance and/or use of confusingly similar and dilutive domain name and trespass of US Uncut LLC's Facebook page, has caused and, unless restrained by this Court, will continue to cause US Uncut LLC irreparable injury. US Uncut LLC, therefore, requests that the Court order Defendants to transfer the "usuncut.news" domain name to US Uncut, or in the alternative to

forfeit the domain name, pursuant to 15 U.S.C. § 1125(d)(1)(C), and to order defendants to return complete control to US Uncut LLC of its Facebook page.

37. US Uncut further requests that the Court order Defendants to remove "usuncut.news" webpage from the Internet, and to refrain from using the "usuncut.news" webpage.

38. In addition to the foregoing relief, US Uncut is entitled to recover its damages as well as any profits realized by Defendants through his conduct, together with the costs relating to this action, pursuant to 15 U.S.C. § 1117(a).

39. Alternatively, US Uncut is entitled at its election to recover statutory damages pursuant to 15 U.S.C. § 1117(d).

**COUNT IV**
**(Unfair Competition and False Designation of Origin 15 U.S.C. § 1125(a))**

40. US Uncut LLC realleges and incorporates herein by reference all of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

41. By reason of Defendants' acts complained of herein, Defendants have intentionally engaged in conduct that constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact tending wrongfully and falsely to describe or represent a connection or affiliation between US Uncut's services and Defendants' services in violation of 15 U.S.C. § 1125(a). The public is likely to be confused by Defendants' use of such false designation of origin and false descriptions or representations regarding US Uncut LLC's goods and services and Defendants' goods and services.

42. Without injunctive relief, US Uncut LLC has no means by which to prevent Defendants' infringing conduct, and US Uncut LLC will continue to be harmed irreparably by

the confusion and deception to the public. No amount of money damages can adequately compensate US Uncut LLC if it loses the ability to control the use of its trademarks, reputation and good will. US Uncut LLC thus is entitled to injunctive relief prohibiting Defendants from using US Uncut LLC's name or marks, or any other confusingly similar names or marks in any way in connection with the offering of news, articles, and other content on the Internet and through social media.

43. US Uncut LLC is also entitled to recover its damages as well as any profits realized by Defendants through their misconduct, together with the costs and attorneys' fees relating to this action, pursuant to 15 U.S.C. § 1117(a).

## COUNT V
### (Unfair and Deceptive Acts and Practices in Violation of RSA 358-A:2)

44. US Uncut LLC realleges and incorporates herein by reference all of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

45. Defendants are "persons" within the meaning of RSA 358-A:1.

46. Defendants, through their use of US Uncut LLC's service mark and deceptively similar marks has, *inter alia*, passed of their goods and services as those of another; caused likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods and services; and caused likelihood of confusion or of misunderstanding as to their affiliation, connection or association with, or certification by US Uncut LLC.

47. Defendants' conduct, as alleged herein, constitutes unfair competition and unfair and deceptive acts in violation of RSA 358-A:2.

48. US Uncut LLC is entitled to recover injunctive relief, actual damages, and its costs and attorneys' fees.

49. Because Defendants' actions, as alleged herein, have been willful and knowing, US Uncut LLC is entitled to three times its actual damages pursuant to RSA 358-A:10.

## COUNT VI
### (Common Law Conversion and Trespass to Chattels)

50. US Uncut realleges and incorporates herein by reference all of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

51. US Uncut owns the Facebook page "US Uncut".

52. Using improper means and without authority, Defendants have misappropriated control of the US Uncut LLC Facebook page by changing the administrator rights to deny US Uncut LLC access to – and control of – its Facebook page.

53. Defendants' conduct constitutes conversion and trespass to chattels under New Hampshire common law, as the Facebook page is property of US Uncut LLC.

54. US Uncut LLC is entitled to injunctive relief to force Defendants to relinquish control and use of the US Uncut LLC Facebook page and to return the administrator rights to US Uncut LLC.

55. US Uncut LLC is also entitled to an award of damages for Defendants' wrongful conversion and trespass to chattels.

**PRAYER FOR RELIEF**

WHEREFORE, US Uncut respectfully requests judgment as follows:

A. Enjoining Defendants from using US Uncut's service mark US UNCUT or any confusingly similar name or mark;

B. Ordering Defendants to transfer the Internet domain name "usuncut.news" to US Uncut, or in the alternative, order Defendants to forfeit this domain name;

C. Ordering Defendants to return to US Uncut all administrator rights to the US Uncut Facebook page and enjoining Defendants from using the US Uncut Facebook page or any other Facebook page which is intended to or which is likely to confuse consumers;

D. Granting other injunctive or equitable relief as may be appropriate to remedy the injuries suffered by US Uncut and to prevent future injuries;

E. Awarding US Uncut its actual damages and an accounting of any and all profits realized by Defendants as a result of his unlawful conduct;

F. Awarding enhanced damages, treble damages, attorneys' fees and other additional damages as allowable under the applicable statutes; and

G. Granting US Uncut such other relief as may be just and equitable.

## JURY DEMAND

US Uncut demands a trial by jury on all issues so triable to the fullest extent permitted by law.

Respectfully submitted,

US UNCUT LLC

By its attorneys,

DEVINE, MILLIMET & BRANCH, PA

Dated: August 15, 2016

/s/ Jonathan M. Shirley
Nicholas K. Holmes, Esquire (NH Bar #1183)
Jonathan M. Shirley, Esquire (NH Bar #16494)
111 Amherst Street
Manchester, NH  03101
Tel.: 603-695-8515
nholmes@devinemillimet.com
jshirley@devinemillimet.com